UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANTHONY LIBRETTI,

                  Petitioner,

vs.                          Case No. 2:06-cv-241-FtM-29SPC

SECRETARY, DEPARTMENT OF
CORRECTIONS,

                  Respondent.

_____

**<u>OPINION AND ORDER</u>**

Petitioner Anthony Libretti (hereinafter "Libretti" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on May 9, 2006,[1] challenging his December 1998, plea-based convictions for: aggravated fleeing and eluding (Count 1); grand theft motor vehicle (Count 2); third degree murder (Count 3); felony causing bodily injury (Count 5), leaving the scene of an accident with death (Count 6), and driving with a suspended licence (Count 7)(Twentieth Judicial Circuit, Collier County, case number 97-1567-CFA). The Petition identifies the following three claims for relief:

> (1) His Fourteenth Amendment right of due process was violated because conviction for the offense "felony causing bodily injury" was not supported by the

---

[1] The Petition (Doc. #1) was docketed and filed in this Court on May 11, 2006. The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." <u>Alexander v. Sec'y Dep't of Corr.</u>, 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

essential underlying element in the case, i.e., the death of the victim, which is not "bodily injury" as a matter of law;

(2)     His Sixth Amendment right to effective assistance of counsel was violated in that trial counsel failed to advise Petitioner that an essential element of the crime of "bodily injury" was not present because death of the victim is distinguished from bodily injury as a matter of law; and

(3)     His Fourteenth Amendment right of due process was violated in that at re-sentencing, the circuit court vacated conviction for third-degree murder (count III) and left intact conviction for felony causing bodily injury (count V), thereby retaining a forty (40) year sentence as a habitual offender.

See generally, Petition. Respondent filed a Response (Doc. #12, Response) to the Petition, and exhibits in support thereof (Exhs. 1-4). See Doc. #13, Respondent's Notice of Filing Exhibits in Paper Format (exhibits not scanned). Respondent submits that grounds one and two were not exhausted in the state courts and are procedurally defaulted because Petitioner abandoned these claims on appeal from the denial of his post-conviction relief. Response at 11. Respondent further contends that ground three is also unexhausted and procedurally barred because Petitioner raised this issue to the State courts only in terms of state law, not federal law. Id. Petitioner filed a reply to the Response (Doc. #15, Reply), along with exhibits (Exhs. A-F).

On March 10, 2008, Petitioner submitted a pleading annexed to his Motion for Leave to Amend Petition (Doc. #19), seeking to add an additional ground for relief. On January 16, 2009, after

directing a response from the State, the Court entered an Order
(Doc. #27), granting Petitioner's Motion for Leave to Amend
Petition to include a fourth ground for relief:

>     (4) His Fourteenth Amendment violation due to the
>     absence of the re-sentencing transcript for
>     appellate review.

On May 11, 2009, after being granted four extensions of time,
Respondent filed a Response to the Amended Petition deemed to
include this additional ground for relief (Doc. #39, Response to
Amended Petition) contending that this new ground is time barred,
unexhausted and procedurally barred. See generally Response to
Amended Petition.[2] Petitioner filed a Reply to the Response to
Amended Petition (Doc. #42). This matter is now ripe for review.

**I.**

The extensive procedural history of this case is set forth in
the exhibits submitted by the State, which include: the November 9,
1998 transcript of Petitioner's guilty plea (Exh. 1 at 93-118);
the December 14, 1998 sentencing transcript (id. at 58-86); the
January 31, 2003 re-sentencing hearing transcript (Exh. 3 at 298-
309); and the February 6, 2003 re-sentencing judgment and sentence
(id. at 130-151).

---

[2]Respondent argued that the additional ground was procedurally
barred but did not object to the new ground as time barred in its
response opposing the proposed amendment. The Court, however, in
its January 16, 2009 Order, expressly stated that "[t]he granting
of the instant Motion should not be implied as a waiver of Fed. R.
Civ. P. Rule 15(c) or of the one-year federal statute of
limitations set forth in 28 U.S.C. § 2244(d). January 16, 2009
Order at 5, n.2.

On August 19, 1997, Petitioner was charged in a seven-count Indictment in Collier County, Florida with committing the following state criminal offenses on July 19, 1997: Aggravated Fleeing and Eluding (Count 1); Grand Theft Motor Vehicle (Count 2); Third Degree Murder (Count 3); Manslaughter (Count 4); Felony Causing Bodily Injury (Count 5); Leaving the Scene of An Accident With Death (Count 6); and Driving on Suspended License (Count 7). Exh. 1 at 3-5. On November 9, 1998, Petitioner withdrew his plea of not guilty and entered a plea of guilty to all charges, except manslaughter, which the State agreed to *nolle prosequi.* Id. at 93-118. Additionally, as reflected in the plea colloquy, Petitioner pled guilty to violations of probation. Id. at 95.

At the change of plea hearing, defense counsel advised the court that Petitioner had rejected the State's plea offer of 30 years, opting for a sentencing hearing at which he would present witnesses. Id. at 96. Petitioner was then placed under oath and advised by the State prosecutor, prior to questioning, as to the maximum penalty for each of the charges to which he was entering a guilty plea. Id. at 96-98. The prosecutor pointed out that the possible penalties could be enhanced due to Petitioner's habitual offender status. Id. at 97.

The State prosecutor then set forth the factual basis of each charge to which Petitioner would be entering a guilty plea, and Petitioner agreed to the recitation of the facts. Id. at 99-101. Petitioner agreed that the plea was in his best interest and denied

-4-

being under the influence of any drugs or intoxicants at the time of his plea. Id. at 101. When asked if Petitioner now, or ever suffered from any mental illness or disability, defense counsel stated "that's going to be part of the sentencing hearing." Id. at 101-102. Counsel clarified that Petitioner was not raising a defense as to any of the charges, but would present certain "mitigating evidence" at his sentencing, and Petitioner agreed that he was waiving any defenses. Id. at 102.

The court then questioned whether Petitioner understood that after the sentencing hearing, the court would render a sentencing decision, consistent with the sentencing guidelines; Petitioner stated he understood. Id. at 102-103. Petitioner acknowledged that he understood he would not be able to withdraw his guilty plea if he did not "like the sentence." Id. at 103. Petitioner denied that he was under any duress or compulsion. Id. Petitioner testified that he understood the significance of the habitual offender designation. Id. He further testified that he understood that his status as a habitual offender would affect any gain time he might receive. Id. at 105.

The Court found that Petitioner's plea was "knowingly, intelligently, freely and voluntarily entered" as to each count. Id. Consequently, the court adjudicated Petitioner guilty of aggravated fleeing and eluding (Count 1), grand theft motor vehicle (Count 2), third degree murder (Count 3), felony causing bodily injury (Count 5), leaving the scene of an accident with death

(Count 6), and driving on suspended license (Count 7).  <u>Id.</u> at 106.

The court also found Petitioner had violated the terms of his

probation in case numbers 96-2091, 96-2305, 96-2105, 96-2306 and

96-2106.  <u>Id.</u>  The court reserved sentencing, but agreed to hear

testimony from the victim's family members who were present at the

hearing.  <u>Id.</u> 107-116.

On December 14, 1998, the court heard testimony on behalf of

the Petitioner and arguments of counsel, then imposed the following

concurrent sentences: 316 months imprisonment on Counts 1, 2 and 6;

30 years imprisonment on Count 3 as a habitual offender; 40 years

imprisonment on Count 4 as a habitual offender; and 60 days jail

time on Count 7.  <u>Id.</u> at 85.

Petitioner filed a timely direct appeal and appointed

appellate counsel filed an <u>Anders</u> Brief.[3]  Exh. 2.  On March 24,

2000, Petitioner's convictions and sentences were affirmed.

<u>Libretti v. State</u>, 756 So. 2d 1009 (Fla. 2d DCA 2000).

On April 29, 2002, Petitioner filed a *pro se* Motion to for

post-conviction Relief Pursuant to Florida Rule of Criminal

Procedure 3.850 alleging two grounds: (1) the trial court erred in

imposing sentence for the offense of felony causing bodily injury;

and (2) trial counsel was ineffective for failing to object to the

prior convictions relied upon for the enhanced sentencing.  Exh. 3

at 1-16.  In particular, in support of his first ground, Petitioner

---

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967).

argued that the conviction of felony causing bodily injury constitutes double jeopardy because Petitioner was also convicted of third degree murder due to the fact that the victim died. Id. at 5-6. Petitioner also argued that a specific element under Florida Statute § 782.015(2) for the crime of felony causing bodily injury is that a death does not occur. Id. at 4-9. Because there was only one victim, who died, Petitioner contended that he could not, as a matter of Florida law, be convicted of felony causing bodily injury. Id. at 5-8. Petitioner also asserted his counsel was deficient for failing to object to these errors. Id. at 9.

As to his second claim, Petitioner argued that the judgment and sentences relied upon by the State as to case numbers 96-2091, 96-2015, 96-2106, 96-2305 and 96-2306 were the product of a single sentence and, as such, constituted a single prior conviction. Id. at 12. Further, the convictions for these offenses were entered on July 15, 1997, and the instant offense was committed on July 19, 1997. Thus, since the 30 day time for filing an appeal had not passed as to these earlier offenses at the time Petitioner committed the instant offense, Petitioner can not be deemed to have been "previously convicted" of these prior offenses, as defined by Florida Statute 775.084(1)(a)(1). Id. Thus, counsel was deficient for failing to object to the use of these prior convictions, and Petitioner suffered prejudice due to counsel's advice that Petitioner qualified as a habitual offender. Id. at 15-16.

The State filed a response arguing that the language of the applicable statute at the time of offense did not contain the language that the lack of death was an element. <u>Id.</u> at 19. In particular, the State noted that Florida Statute § 782.015(2) was amended effective October 1, 1998, to include the new language, but this was after Petitioner committed the crime charged. The amendment also resulted in a name change of the statute from "felony causing bodily injury" to "attempted felony murder." <u>Id.</u> Further, the State argued that under the <u>Blockburger</u>[4] test, the offenses of felony causing bodily injury and third degree murder did not constitute double jeopardy because each offense required proof of different elements. <u>Id.</u> at 20. With regard to Petitioner's argument concerning his designation as a habitual offender, the State pointed out that the applicable statute required only that the convictions be sentenced separately, not that the convictions be final prior to the new offense. <u>Id.</u> at 20-21.

On October 10, 2002, the postconviction trial court entered an order granting in part and denying in part Petitioner's Rule 3.850 motion. <u>Id.</u> at 63-102. The court agreed with the State that "the statutory section [Florida Statute 782.015(2)] in effect at the time [Libretti] committed his crime did not contain the language "but did not cause the death of another." <u>Id.</u> at 63. Similarly,

---

[4] <u>Blockburger v. U.S.</u>, 284 So. 2d 299 (1932), codified at § 775.031, Fla. Stat. (1997).

the court concluded that the habitual offender statute did not require that the predicate convictions "be final at the time the relevant offense is committed." Id. at 67. Further, the court noted that Libretti did not allege that the predicate offenses were on appeal or not final at the time of sentencing. Id. The court, however, concluded that Petitioner was entitled to relief on his double jeopardy argument. Id. at 66. In pertinent part, the court concluded that the offenses of felony causing bodily injury and third degree murder "are degree variants of the same underlying offense, and therefore, the punishment of both for the same underlying act is precluded." Id. Consequently, the court "summarily denied" Petitioner's Rule 3.850 motion, except "with regard to his double jeopardy claim," appointed counsel for Petitioner, and ordered a new sentencing hearing. Id. at 67.

At the January 31, 2003 re-sentencing, the State requested the court to vacate the third degree murder count (Count 3) due to it being the lesser degree felony; and, keep the sentence intact on the habitualized felony causing bodily injury count (Count 5) due to it being a first degree felony. Exh. 3 at 300. Counsel for Petitioner argued that the conviction for felony causing bodily injury (Count 5) should be vacated, consistent with the relief sought by Petitioner in his Rule 3.850 motion, and Petitioner should be subject to a *de novo* sentencing to include only counts 1, 2, 3, 6 and 7. Id. at 301. After hearing argument on whether the

court was required to conduct a sentencing *de novo* and whether the double jeopardy finding permitted the greater offense to be vacated and the lesser offense to stand, the trial court agreed to continue the hearing in order that the parties could submit case law in support of their respective positions.  Id. at 308.

On February 6, 2003, the court held a second re-sentencing hearing, and as evidenced by the judgment and sentence dated February 19, 2003,[5] Petitioner was re-sentenced as follows: third degree murder (Count 3) vacated due to double jeopardy; 50 months, with credit for time served, on Counts 1, 2 and 6; 40 years on felony causing bodily injury (Count 5), and sentence complete on Count 7.  Id. at 130-131 and 132-162.

Petitioner filed a timely notice of appeal from the re-sentencing and was appointed counsel.  Exh. 3, Part II at 163. Appointed counsel, noting that the transcript of the February 6, 2003 hearing could not be located, filed a motion with the appellate court to relinquish jurisdiction so that the record of the re-sentencing hearing could be reconstructed.  On January 23, 2004, the parties, Judge Miller, the re-sentencing judge, Mr. Provost, the State prosecutor, Ms. Kirby, re-sentencing attorney, and Ms. Hagedorn, the court reporter, convened for this purpose. Id. at 224-247.

---

[5]A copy of the transcript of the second re-sentencing hearing does not exist.

Appellant counsel raised the following grounds on appeal: (1) the reconstructed record was insufficient to provide meaningful appellant review of the re-sentencing; (2) the trial court erred in re-sentencing Petitioner as a habitual offender without a full evidentiary hearing; (3) a successor judge should not have re-sentenced Petitioner absent a showing of necessity; and, (4) Petitioner's conviction and sentence for felony causing bodily injury (Count 5) should have been vacated and Petitioner should have been re-sentenced on third degree murder (Count 3). Exhibit 3, Part II.[6] The State filed a brief in response. Id. On December 17, 2004, the appellate court *per curiam* affirmed Petitioner's re-sentencing. Libretti v. State, 892 So. 2d 1029 (Fla. 2d DCA 2004).

On February 1, 2005, Petitioner filed a *pro se* motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). Exh. 4. Petitioner's Rule 3.800 motion identified two grounds for relief: (1) the plea and sentence in Count 5, felony causing bodily injury, was illegal because the plea was entered and sentence imposed to a crime that was "non-existent" at the time of the plea and sentencing; and (2) the habitual offender sentence was illegal because prior qualifying convictions were entered and sentence imposed on the same date as the instant offense. Id. at 6-12. The State filed a response to the Rule

---

[6]Contained within referenced exhibit but no further designation by page number provided.

3.800 motion, citing to State v. Battle, 661 So. 2d 38 (Fla. 2d DCA 1995), and argued that the statute in effect at the time Libretti committed the crime, on July 19, 1998, is the controlling statute for purposes of punishment. Exh. 4.[7] Further, the State argued that the record refutes Petitioner's claim that he did not have sequential convictions to qualify under the habitual offender statute. In particular, the State argued that Libretti was convicted of a felony on March 3, 1995, and was convicted of numerous felonies on July 15, 1997. Relying on McCall v. State, 862 So. 2d 807 (Fla. 2d DCA 2004), the State argued that the imposition of probation in Libretti's March 3, 1995 conviction, qualified as a "sentence" for purposes of Florida's habitual offender statute. Id.[8] On July 13, 2005, the post-conviction court entered an order denying Petitioner's Rule 3.800 motion. Exh. 4.[9] In pertinent part, the court found as follows:

_____

[7]Contained within referenced exhibit but no further designation by page number provided.

[8]The State pointed out in its reply brief that, at the time of briefing, the issue of whether probation qualified as a "sentence" had been certified to the Florida Supreme Court due to second district's McCall decision being in conflict with the fourth district's decision in Richardson v. State, 884 So. 2d 950 (Fla. 4th DCA 2003). The Court recognizes that the Florida Supreme Court subsequently agreed with the second district court's decision in McCall and held that imposition of probation is a "sentence" for purposes of the habitual offender statute. State v. Richardson, 915 So. 2d 86, 87-88 (Fla. 2005).

[9]Contained within referenced exhibit but no further designation by page number provided.

-12-

4.    As to Claim I, Defendant alleges that his judgment
and sentence for Felony Causing Bodily Injury is
illegal because the Legislature amended Fla. Stat.
§ 782.051(2) to provide for the crime of attempted
felony murder, effective October 1, 1998.
Defendant argues that the crime he pled to and was
sentenced for no longer existed after October 1,
1998.  As he entered into his plea on November 9,
1998, and was sentenced on December 14, 1998,
Defendant asserts that his judgment and sentence
are illegal.  However, "it is firmly established
law that the statutes in effect at the time of
commission of a crime control as to the offenses
for which the perpetrator can be convicted, as well
as the punishments which may be imposed." State v.
Smith, 547 So. 2d 613, 616 (Fla. 1998);[10] see also,
State v. Battle, 661 So. 2d 38 (Fla. 2d DCA 1995).
Thus the date Defendant entered his plea and the
date he was sentenced are irrelevant for
determining whether Defendant could be convicted of
Felony Causing Bodily Injury.   As Defendant
committed the crime on July 19, 1997, well before
the effective date of the amendment, Defendant has
failed to demonstrate that the crime of Felony
Causing Bodily Injury did not exist at the relevant
time.  To the extent that Defendant may be arguing
that the underlying facts of his case do not
support a conviction for Felony Causing Bodily
Injury, such a claim is an attack on his conviction
rather than his sentence and is not cognizable in a
Rule 3.800(a) motion. See Shortridge v. State, 884
So. 2d 321 (Fla. 2d DCA 2004); State v. Williams,
854 So. 2d 215 (Fla. 1st DCA 2003).  As such,
Defendant has failed to demonstrate an entitlement
to relief on Claim I.

5.    As to Claim II, Defendant claims that he was
sentenced for violating probation (VOP) in Case
Numbers 96-2091, 96-2105, 96-2106, 96-2305 and
96-2306, hereinafter "the 1996 cases," as part of
the same proceeding during which those cases were
used as one of the prior offenses used to
habitualize him on Count V in Case Number
97-1567CFA.  Relying on Richardson v. State, 884

---

[10]Valdes v. State, 3 So. 3d 1067, 1072 (Fla. 2009)(recognizing
statutory provision in State v. Smith superceded by statute, ch.
88-131, section 7, Laws of Florida).

So. 2d 950 (Fla. 4th DCA 2003), Defendant asserts
that his original sentences to probation in the
1996 cases cannot be used as a prior conviction to
habitualize him, and, as [sic] sentenced imposed
during the same proceeding do not meet the
sequential conviction requirement, the prison
sentences imposed, in the 1996 cases for VOP on
December 14, 1998 could not be used to habitualize
him. As to his claim that the use of his VOP
sentences in the 1996 cases violates the sequential
conviction requirement, the record reflects that
the State used the underlying convictions in the
1996 cases rendered July 15, 1997, to habitualize
Defendant, not the VOP sentences. <u>See</u> page 4 of
the transcript of the December 14, 1998 sentencing
hearing, the relevant portions of which are
attached hereto. Regarding Defendant's reliance
upon <u>Richardson</u>, as Defendant points out in his
motion, the Second District Court of Appeal's
holding in <u>McCall v. State</u>, 862 So. 2d 807 (Fla. 2d
DCA 2003), conflicts with <u>Richardson</u>. In <u>McCall</u>,
the Court held that a sentence of probation
qualifies as a sentence for purposes of Fla. Stat.
§ 775.084. <u>Id.</u> As the State correctly points out,
this Court is bound by the holding in <u>McCall</u>.
Therefore, Defendant has failed to demonstrate an
entitlement to relief.

<u>Id.</u> at pp. 2-4 of July 13, 2005 Order.  Petitioner's motion for

rehearing was denied on August 5, 2005.

On August 29, 2005, Libretti filed a Notice of Appeal of the

July 13, 2005 order denying his Rule 3.800 motion, and the August

5, 2005 order denying his motion for rehearing.  Exh. 4.[11]

Respondent states that, pursuant to Florida Rule Appellate

Procedure 9.141(b)(2), no briefs were filed in connection with this

appeal due to the summary denial of the motions.  Response at 8.

On January 26, 2006, the appellate court *per curiam* affirmed the

---

[11]Contained within referenced exhibit but no further
designation by page number provided.

-14-

post-conviction court's denial of Petitioner's Rule 3.800 motion. <u>Libretti v. State</u>, 922 So. 2d 206 (Fla. 2d DCA 2006). Mandate issued February 15, 2006.

## II.

Petitioner filed the underlying Petition on May 31, 2006, and submitted his pleading setting forth the fourth ground for relief on May 10, 2008 (Doc. #19). The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. <u>Abdul-Kabir v. Quarterman</u>, 127 S. Ct. 1654, 1664 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792 (2001). Under the AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007)(citation omitted). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 403-404 (2000)). The following legal principles apply to this case.

### A. Exhaustion

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. § 2254(b)(1)(A). This imposes a "total

exhaustion" requirement in which all the federal issues must have first been presented to the state courts. <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). <u>See</u> <u>also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the <u>same</u> claim to the state court that he now requests the federal court to consider. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); <u>Kelly v. Sec'y for the Dep't of Corr.</u>, 377 F. 3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996); <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337, 1342 (11th Cir. 2007). With regard to claims of ineffectiveness of trial counsel, a petitioner must have presented those claims to the

state court "'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" <u>Ogle v. Johnson</u>, 488 F. 3d 1364, 1368 (11th Cir. 2007)(<u>citing</u> <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted). However, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the courts] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." <u>Snowden</u>, 135 F.3d at 736 (citations omitted).

**B. Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. <u>House v. Bell</u>, 547

U.S. 518, 536-37 (2006); <u>Mize</u>, 532 F.3d at 1190.  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.  <u>House</u>, 547 U.S. at 536; <u>Edwards</u>, 529 U.S. at 451; <u>Henderson</u>, 353 F.3d at 892.

### III.

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court for purposes of ruling on the four Grounds raised in the Petition.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).  Consequently, the Court will address the four grounds identified by Petitioner.

### **Ground Four**

Respondent concedes that the Petition was timely filed, Response at 4, n.2, but submits that Petitioner's fourth ground for relief is untimely.  Response to Amended Petition.  The Court agrees.

The statute of limitations that governs the filing of Petitioner's Petition and Amended Petition is set forth at 28 U.S.C. § 2244(d), which provides in relevant part as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .

28 U.S.C. § 2244(d). Here, Petitioner's state conviction was final on the March 18, 2005 (ninety days after the appellate court affirmed the entry of the re-sentencing and judgment). <u>See</u> Rules of the Supreme Court of the United States, Rule 13.3.[12] <u>See also</u> <u>Chafers v. Sec'y Fla. Dep't of Corr.</u>, 468 F.3d 1273, 1275 (11th Cir. 2006). Due to Petitioner's collateral filings, which tolled the running of the federal limitations period until mandate issued on the denial of Petitioner's Rule 3.800 motion, the one-year federal limitations period did not actually commence until February 15, 2006. Consequently, on May 9, 2006, when Petitioner filed his original § 2254 Petition (Doc. #1), the federal limitations period had run for only 82 days.

However, it was not until May 19, 2008, that Petitioner's fourth claim for relief was first raised in his pleading attached

_____

[12] United States Supreme Court Rule 13.3 states, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]"

to his Motion for Leave to File Amended Complaint (Doc. #19).  This was well after the federal limitations period expired, and, unless it relates back to the original Petition,[13] is untimely.[14]  <u>See</u> Fed. R. Civ. P. 15(c).

Respondent submits that this new ground for relief does not relate back to the other grounds for relief identified in the Petition.  Response to Amended Petition at 4.  Petitioner asserts that the newly "amended claim of the missing transcript" . . . "goes to the soul and entire substance of [the] Petition. . . ." Reply to Respondent's Amended Response at 7.

In pertinent part, Fed. R. Civ. P. 15(c)(2) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading."  The terms "conduct, transaction, or occurrence" are to be narrowly construed and are not synonymous with "trial, conviction, or sentence."  <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 660-664 (2005).  In other words, the fact that a claim relates back to a petitioner's trial, conviction,

_____

[13]Habeas Corpus Rule 11 permits application of the Federal Rules of Civil Procedure to habeas proceedings "to the extent that the are not inconsistent with any statutory provisions or [the habeas] rules." <u>See</u> <u>also</u> Fed. R. Civ. P. 81(a)(4).  Habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.

[14]The filing of Petitioner's initial Petition does not toll the one-year limitation period.  <u>Duncan v. Walker</u>, 533 U.S. 167, 172 (2001).

-20-

or sentence is not determinative of whether the relation back doctrine is satisfied. <u>Davenport v. United States</u>, 217 F.3d 1341, 1344 (11th Cir. 2000). Rather, the test for determining whether a new claim relates back to an original claim is whether the claim is "tied to a common core of operative facts." <u>Mayle</u>, 545 U.S. at 664. This is consistent with the factual specificity requirement set forth in Habeas Corpus Rule 2(c), which apprises petitioners that "[t]he petition must . . . specify all the grounds for relief . . . [and] state the facts supporting each ground." <u>See</u> <u>also</u> <u>Mayle</u>, 545 U.S. at 661. Thus, relation back is only appropriate "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." <u>Id.</u> at 658 (quoting <u>United States v. Craycraft</u>, 167 F.3d 451, 457 (8th Cir. 1999); <u>accord</u> <u>Davenport v. United States</u>, 217 F.3d at 1344 (rejecting a generalized application of the relation back doctrine and expressly adopting the factually specific test set forth in <u>Craycraft</u>, <u>Id.</u>)). Rule 15(c)(2) is "to be used for a relatively <u>narrow</u> purpose" and is not intended "to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." <u>Farris v. United States</u>, 333 F.3d 1211, 1215 (11th Cir. 2003).

Petitioner's newly raised claim concerning the missing re-sentencing transcript is wholly unrelated to the other three claims raised in the original Petition. It is removed in time, and

unquestionably raises a different type of claim than those advanced in the original Petition. In ground one, Petitioner challenges the elements necessary for a conviction of felony causing bodily injury. In ground two, Petitioner faults trial counsel for failing to advise him that the elements to support a conviction of felony causing bodily injury was not supported by the evidence due to the death of the victim. In ground three, Petitioner incorporates his first two claims and contends that the re-sentencing court vacated the wrong count. Petitioner's added fourth ground for relief stems from the lack of a transcript of the re-sentencing resulting in an inability to obtain meaningful appellate review of the new sentence. Consequently, the Court finds that this claim does not relate back to any of the claims advanced by Petitioner in his original Petition. Thus, the Court will dismiss the newly added fourth ground as time barred.

Additionally, the Court does not find any justifiable reason to apply the doctrine of equitable tolling to the fourth claim for relief. Equitable tolling is appropriate only where a petitioner establishes both extraordinary circumstances that are both beyond his control and due diligence. <u>Diaz v. Sec'y for Dep't of Corr.</u>, 362 F.3d 698, 702 (11th Cir. 2004). The Eleventh Circuit has continued to emphasize that "[e]quitable tolling is an extraordinary remedy that must be applied sparingly" for "[a] truly extreme case." <u>Holland v. Florida</u>, 539 F.3d 1334, 1338 (11th Cir. 2008). Here, Petitioner fails to demonstrate due diligence or

explain why he failed to raise this additional ground in his initial Petition.  Clearly Petitioner was aware of the potential claim because appellate counsel raised it on direct appeal after Libretti's re-sentencing.

**Ground Two**

As to the remaining three grounds raised in the original Petition, the Court concludes that ground two has not been exhausted.  Although Petitioner raised an ineffective assistance of trial counsel claim in his Rule 3.850 motion, Petitioner did not appeal the post-conviction court's summary denial of this claim.  As noted earlier, the post-conviction court granted the Rule 3.850 motion to the extent that it found the offenses of felony causing bodily injury and third degree murder constituted double jeopardy, but otherwise the court "summarily denied" Petitioner's Rule 3.850 motion.  Exh. 3 at 67.  Petitioner did not appeal the summary denial of the other grounds he identified in his Rule 3.850 motion.  Instead, after re-sentencing, Petitioner filed a direct appeal challenging the re-sentencing court's ruling to keep intact the first degree felony and vacate the lesser felony of third degree murder due to the double jeopardy violation.  Petitioner never gave the Florida appellate court the opportunity to review the trial court's ineffective assistance of counsel ruling.

In Florida, exhaustion of a Rule 3.850 claim includes an appeal from its denial.  <u>See</u> <u>Martin v. Sec'y Dep't of Corr.</u>, No. 6:05-cv-1815, 2008 WL 2490447 *10 (M.D. Fla. June 19, 2008)(citing

<u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5th Cir. 1979)(finding that exhaustion requires not only the filing of a Rule 3.850 motion[15] but also an appeal of its denial)). Petitioner does not deny that he did not fully exhaust this issue. Petition at 10. Petitioner explains that "court appointed counsel failed to raise the issue." <u>Id.</u>

While Petitioner suggests that appellate counsel was constitutionally ineffective for failing to raise these issues on appeal, such a claim does not constitute cause here. Petitioner raised this issue in his Rule 3.850 motion, not on direct appeal. The Supreme Court has held that "[t]here is no constitutional right to an attorney in state post-conviction proceedings," and "[c]onsequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." <u>Coleman v. Thompson</u>, 501 U.S. 722, 753-54 (1991). "A petitioner cannot establish constitutionally ineffective assistance of counsel in state post-conviction proceedings because there is no constitutional right to an attorney in such proceedings." <u>Jimenez v. Sec'y Dep't of Corr.</u>, 481 F.3d 1337, 1344 (11th Cir. 2007). <u>See also</u> <u>Mize v. Hall</u>, 532 F.3d at 1191 (stating "[b]ecause a petitioner has no right to counsel during state collateral review, even grossly ineffective assistance at the collateral review stage,

_____

[15]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

or no assistance at all, does not constitute cause to excuse a procedural default."). Moreover, constitutionally ineffective assistance of counsel can constitute cause only if that claim is not itself procedurally defaulted. <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000). Here, Petitioner did raise a claim of ineffective assistance of appellate counsel below.

Based on the foregoing, the Court finds that Petitioner does not demonstrate cause for this default and actual prejudice; or, a fundamental miscarriage of justice. Consequently, the Court will dismiss ground two as unexhausted and procedurally barred.

**<u>Grounds One and Three</u>**

Habeas relief does not lie for claims of violation of state law.[16] Moreover, a state's interpretation of its own laws or rules provides no federal habeas relief because no question of a federal constitutional question if involved. "State courts are the ultimate expositors of their own states' laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a State's criminal statutes by the court of that State . . . ." <u>Mendiola v. Estelle</u>, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

---

[16]The arguments advanced in the collateral motions and responses, as well as the post-conviction court's reasoning denying relief rely exclusively on the interpretation of Florida law and the legislative intent behind the statute. Further, the Florida Constitution provides that "[r]epeal or amendment of a criminal statute shall not affect prosecution or punishment for any crime previously committed." Article 10, § 9, Florida Constitution.

Review of the record demonstrates that Petitioner did not exhaust the newly framed constitutional dimension of grounds one and three. While Petitioner actively pursued some form of these two grounds to the State courts on direct appeal and in his Rule 3.800 motion, he raised these claims in terms of a violation of State law only, addressing his substantive arguments only to Florida law. The purpose of the exhaustion requirement is "to afford the state courts a meaningful opportunity to consider allegations of legal error without the interference of the federal judiciary." Vasquez v. Hillery, 474 U.S. 254, 257 (1986). The Supreme Court has strictly construed the exhaustion requirement, noting that "if a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66 (1995). Libretti made no such statement in his State filings.

A federal petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim . . . ." Baldwin v. Reese, 541 U.S. 27, 32 (2004). Here, Petitioner did not "alert the [Florida] court to the alleged federal nature of his claim[s]." Cook v. McNeil, 266 Fed. Appx. 843, 845 (11th Cir. 2008)(quoting Baldwin v. Reese, 541 U.S. 27, 33 (2004)). By not raising the constitutional dimension of these

claims, if any, to the State court, Libretti deprived the State courts of a "full opportunity to resolve any constitutional issue by invoking one complete round of the State's established review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Nor does Petitioner demonstrate cause for this default and actual prejudice; or, a fundamental miscarriage of justice. Consequently, the Court will dismiss grounds one and three as unexhausted and procedurally barred, and in the alternative as failing to raise a federal question.

Accordingly, it is now

**ORDERED:**

1. Petitioner's Petition (Doc. #1) and Amended Petition (Doc. #28) for Writ of Habeas Corpus, deemed to include ground four set forth in the pleading attached to Petitioner Motion to Amend (Doc. #19), are **DISMISSED** for the reasons set forth above.

2. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __25th__ day of August, 2009.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record